UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

TIMOTHY M. LAVELLE,

Plaintiff,

v.                                                      **DECISION AND ORDER**
                                                               15-CV-148S

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

═══════════════════════════════════

1.      Plaintiff Timothy M. Lavelle challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that he has been disabled since October 2, 2010, due to Graves' disease, generalized anxiety disorder, and status-post left shoulder surgical repair.  Plaintiff contends that his impairments render him unable to work and that he is therefore entitled to Disability Insurance Benefits ("DIB") under the Act.

2.      On June 26, 2012, Plaintiff applied for DIB.  His application was initially denied on September 5, 2012.  Plaintiff requested a hearing on September 10, 2012.  Pursuant to Plaintiff's request, ALJ Harvey Feldmeier held an administrative video hearing on July 16, 2013.  Plaintiff, who was represented by counsel, appeared and testified by video from Jamestown, New York before ALJ Feldmeier, who presided over the hearing from New York, New York.  The ALJ considered the case *de novo*, and, on August 15, 2013, issued a decision denying Plaintiff's application for benefits.  On December 17, 2014, the Appeals Council denied Plaintiff's request for review.  Plaintiff

1

filed the current civil action on February 17, 2015, challenging Defendant's final decision.[1]

3.    On August 27, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 10.) On October 26, 2015, Defendant filed her own Motion for Judgment on the Pleadings. (Docket No. 12.) This Court took the motions under advisement without oral argument. For the reasons discussed below, Defendant's motion is granted and Plaintiff's is denied.

4.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

[1] The ALJ's August 15, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

must also include that which detracts from its weight." <u>Williams on Behalf of Williams v.</u>
<u>Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the
Commissioner's finding must be sustained "even where substantial evidence may
support the plaintiff's position and despite that the court's independent analysis of the
evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147,
153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's
determination considerable deference, and will not substitute "its own judgment for that
of the [Commissioner], even if it might justifiably have reached a different result upon a
*de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d
Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation
process to determine whether an individual is disabled under the Act.   <u>See</u> 20 C.F.R.
§§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this
analysis in <u>Bowen v. Yuckert</u>, and it remains the proper approach for analyzing whether
a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119
(1987).

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently
engaged in substantial gainful activity.  If he is not, the [Commissioner]
next considers whether the claimant has a "severe impairment" which
significantly limits his physical or mental ability to do basic work activities.
If the claimant suffers such an impairment, the third inquiry is whether,
based solely on medical evidence, the claimant has an impairment which
is listed in Appendix 1 of the regulations.  If the claimant has such an
impairment, the [Commissioner] will consider him disabled without
considering vocational factors such as age, education, and work
experience; the [Commissioner] presumes that a claimant who is afflicted
with a "listed" impairment is unable to perform substantial gainful activity.
Assuming the claimant does not have a listed impairment, the fourth
inquiry is whether, despite the claimant's severe impairment, he has the

residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     While the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above:  (1) Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of October 2, 2010, through his date last insured of September 30, 2011 (R. at 15);[2] (2) through the date last insured, Plaintiff's Graves' disease, generalized anxiety disorder, and status-post left shoulder surgical repair constituted "severe" impairments within the meaning of the Act[3] (id.); (3) through the date last insured, Plaintiff's impairments did not meet or medically equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (id.); (4) through the date

---

[2] Citations to the underlying administrative record are designated as "R."
[3] The ALJ found Plaintiff's diagnosis of hemochromatosis and history of bladder cancer to be non-severe impairments.

last insured, Plaintiff retained the residual functional capacity ("RFC") to walk at least one mile at a time, sit without limitation, stand without limitation, and lift 50 pounds with his dominant right arm, Plaintiff had no trouble bending or kneeling, and he was limited to occasional reaching with his non-dominant left arm, Plaintiff could meet the mental demands of simple work and perform complex tasks, but needed to avoid frequent public contact when his medication required adjustment (R. at 19-20); and (5) through the date last insured, Plaintiff was capable of performing his past relevant work as a house painter, as he had performed it (R. at 20).  Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through September 30, 2011, the date last insured.  (Id.)

10.    Plaintiff advances two challenges to the ALJ's decision.[4]  First, Plaintiff argues that the ALJ erred by giving significant weight to the opinion of Licensed Master Social Worker (LMSW) Mann.  Plaintiff contends that, as a social worker, Mann is not an "acceptable source."  Plaintiff also contends that the ALJ appeared to mistake Mann for a psychiatrist and that, had the ALJ been aware that Mann was a social worker and not a psychiatrist, he would have given greater weight to the opinion of Plaintiff's treating physician as to Plaintiff's non-exertional limitations.

During the hearing, Plaintiff's counsel referred to Mann as "Dr. Mann."  (R. at 43.) The ALJ then asked if "Dr. Mann is the psychiatrist," to which Plaintiff's counsel responded in the affirmative.  (Id.)  The ALJ also referred to Mann as "Dr. Mann" in his decision, thus indicating that he may have mistakenly believed Mann to be a psychiatrist rather than a social worker.  (R. at 19.)  Pursuant to the Act, a social worker is

---

[4] Plaintiff made a third argument in his Motion for Judgment on the Pleadings, but withdrew that argument in his Reply.  (See Docket No. 13 at p. 5).

considered an "other source" as opposed to an "acceptable" medical source, such as a licensed physician or psychologist.  20 C.F.R. §§ 404.1513, 416.913.  Evidence from other sources is "important and should be evaluated on key issues such as impairment severity and functional effects."  <u>See</u> SSR 06-03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2-3 (SSA Aug. 9, 2006).  However, "'[o]ther' source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions."  <u>Casey v. Comm'r of Soc. Sec.</u>, No. 7:13-CV-0947 GTS/ESH, 2015 WL 5512602, at *12 (N.D.N.Y. Sept. 15, 2015).

Plaintiff met with Mann on August 3, 2012, for a psychosocial evaluation, which included a psychiatric initial assessment and diagnostic treatment plan.  (<u>See</u> R. 214-21.)  Mann's opinion sets forth a comprehensive history of Plaintiff's mental health, as well as an assessment of Plaintiff's mental state.  Mann found Plaintiff to be well-oriented in all spheres, with a "pleasant and cooperative" attitude.  (R. at 218.)  He also found Plaintiff's recent memory to be intact, his remote memory to be only mildly impaired, and his judgment and insight to be fair.  (<u>Id.</u>)  Mann opined that Plaintiff suffers from generalized anxiety disorder which stems from situational factors, and could benefit from some brief therapy sessions.  (R. at 221.)  He assigned Plaintiff a Global Assessment Functioning ("GAF") score of 68,[5] which denotes mild symptoms or mild functional limitations.  (R. at 219.)

---

[5] The GAF score is a numeric scale ranging from 0 (lowest functioning) through 100 (highest functioning). Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders 32* (4th ed. 2000).  The GAF is a scale promoted by the American Psychiatric Association to aid in tracking the clinical progress of individuals with psychological problems in global terms. <u>Id.</u>  A GAF score of 61-70 denotes some mild symptoms or some difficulty in occupational, social, or school functions, but the individual has some meaningful interpersonal relationships and generally functions well. <u>Id.</u>

Mann's assessment does not differ materially from the progress and treatment notes of Dr. Wnuk, Plaintiff's treating physician.  On March 12, 2010, while Plaintiff was still employed, Dr. Wnuk stated that Paxil controlled Plaintiff's anxiety well.  (R. at 183.) At the only visit during the relevant period, on June 7, 2011, Plaintiff reported to Dr. Wnuk's physician's assistant that he did not feel sad, irritable, blue, or depressed, and was taking "pleasure in life."  (R. 229.)  In visits following Plaintiff's date last insured, Dr. Wnuk found that Plaintiff was "alert and cooperative" and that his anxiety "allows [him] to partially function" (R. at 170-71), and Dr. Wnuk's physician's assistant further confirmed that Plaintiff's anxiety was stable and well-controlled on medication.  (R. at 238-39, 244-45.)

The ALJ ultimately afforded limited weight to Dr. Wnuk's conclusion that Plaintiff is "unlikely to return to the workforce in any meaningful capacity" (R. at 248) because "Dr. Wnuk's statements are unsupported by his own treatment notes."[6]  (R. at 19.)  He afforded significant weight to Mann's opinion, because, although it was undertaken several months after Plaintiff's date last insured, "it is fully consistent with Dr. Wnuk's progress notes indicating that the claimant consistently has been stable and his mental symptoms have been controlled with Paxil."  (R. at 19.)  Therefore, the non-exertional limitations that the ALJ assessed for the Plaintiff—that Plaintiff could meet the mental demands of simple work and perform complex tasks, but needed to avoid frequent

---

Fifteen days before the ALJ's decision, on July 31, 2013, the Social Security Administration issued a bulletin limiting the use of GAF scores, and instructing ALJs to rely instead on a clinician's description of mental state.  See Marinella v. Colvin, No. 13-CV-2453-JG., 2014 WL 18395, at *5 (E.D.N.Y. Jan. 14, 2014) ("[g]enerally, the guidance instructs ALJs to treat GAF scores as opinion evidence; the details of the clinician's description, rather than a numerical range, should be used").  Here, the ALJ did not rely solely on the GAF score, but considered the score in the context of Mann's broader description of Plaintiff's mental health.

[6] Dr. Wnuk's conclusion was also based, in part, on Plaintiff's physical limitations, as discussed further below.

public contact when his medication required adjustment (R. at 19-20)—align with Dr. Wnuk's treatment notes, which attributed to Plaintiff a mild disability due to anxiety.

Moreover, there is no inherent error in assigning significant weight to an "other source" opinion.  See, e.g., Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) (noting that significant weight may be assigned to a chiropractor in "appropriate circumstances"); Rodriguez v. Barnhart, 249 F. Supp. 2d 210, 213 (E.D.N.Y. 2003) (same).  Indeed, in appropriate cases, "other source" opinion may even outweigh opinion of an "acceptable medical source."  See SSR 06-03p, 2006 WL 2329939, at *5 ("Giving more weight to the opinion from a medical source who is not an 'acceptable medical source' than to the opinion from a treating source does not conflict with the treating source rules. . . .").

This Court is not persuaded by Plaintiff's argument that, had the ALJ known Mann was a social worker, he would have given more weight to Dr. Wnuk's conclusory statement on disability.  "While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record."  Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted).  Moreover, a treating source's statement that a plaintiff "is disabled" or "unable to work" is not considered a "medical opinion" under the treating physician's rule, and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner.  See 20 C.F.R. §§ 404.1527(e); 416.927(e) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.").  Here, Dr. Wnuk's conclusion as to disability was contradicted by:  (a) his own treatment notes, which suggested that Plaintiff's anxiety was well-controlled by medication; (b) treatment notes from Dr. Wnuk's physician's assistant, who stated the same; (c) Mann's comprehensive

8

discussion of Plaintiff's mental state; and (d) Plaintiff's own testimony and report of daily activities. "The ALJ's discussion of all these medical opinions shows careful consideration of the requisite factors for assessing a treating physician's opinion." <u>Bliss v. Comm'r of Soc. Sec.</u>, 406 F. App'x 541, 541-42 (2d Cir. 2011) (citing <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam); 20 C.F.R. § 404.1527(d)(2)). The evidence that is inconsistent with the assessment by Dr. Wnuk's opinion is sufficient for "a reasonable mind [to] accept as adequate to support [the ALJ's] conclusion." <u>Halloran</u>, 362 F.3d at 31. Substantial evidence therefore supports the ALJ's finding.[7] Accordingly, there was no error in giving Mann's opinion significant weight.

11.    Second, Plaintiff argues that the ALJ erred by not adequately developing the record. Plaintiff contends that the record is incomplete because the ALJ rejected Dr. Wnuk's conclusion as to disability, and that the ALJ therefore improperly determined the RFC on the basis of bare medical findings.

Although the duty to develop the record "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled," <u>Rodriguez</u>, 2003 WL 22709204, at *3, an ALJ is under no obligation to seek additional information prior to denying a claim "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history." <u>Petrie v. Astrue</u>, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted). Here, the ALJ was in possession of

---

[7] Further, it was Plaintiff's counsel who represented to the ALJ that LMSW Mann was "the psychiatrist." Therefore, "any confusion on this point must be imputed to the plaintiff and her attorney who suggested that" he was a psychiatrist and thereby introduced the uncertainty. <u>See</u> <u>Burden v. Astrue</u>, No. CIV. 3:07CV0642 JCH, 2008 WL 5083138, at *10 (D. Conn. Aug. 26, 2008), report and recommendation adopted, 588 F. Supp. 2d 269 (D. Conn. 2008)

all examination findings, treatment notes, and medical assessments from before, during, and after the relevant period, including an opinion from Plaintiff's treating physician, Dr. Wnuk.  And, as Plaintiff concedes, the ALJ did not reject Dr. Wnuk's opinion in its entirety.  Although the ALJ rejected the conclusion that Plaintiff is "unlikely to return to the workforce in any meaningful capacity" (R. at 248), he in fact incorporated the limitations assessed by Dr. Wnuk into the RFC where those limitations were not otherwise contradicted by Dr. Wnuk's treatment notes, Plaintiff's reports of his daily activities, or other evidence in the record.  For example, Dr. Wnuk found that Plaintiff had pain in his left shoulder on active adduction (R. at 183), and the RFC limits Plaintiff to occasional reaching with that arm (R. at 16-17).  The ALJ also based his determination on the fact that Plaintiff's physical impairments did not appear to have worsened in between the time that Plaintiff was working—as to which period he testified that he was able to perform the necessary tasks of his work, including lifting a sixty pound paint bucket and painting with a brush (R. 34-35)—and the approximately one year period after being laid off, for which he sought disability benefits.  (R. at 18 ("nothing in the record establishes any worsening of the claimant's physical impairments, all of which he had while continuing to work").)  Additionally, the ALJ relied on Plaintiff's own testimony regarding his functional limitations, specifically the statements that he "could walk a mile" (R. at 39); he "can sit, no problem"; he can kneel; and he can lift "40 pounds" with his dominant right arm.  (R. at 40.)

But even if the ALJ had rejected Dr. Wnuk's opinion, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion . . ., [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'"  Lewis v. Colvin, No. 13-CV-1072S, 2014

WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014), quoting Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013).  The "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'"  Sickles v. Colvin, No. 12-CV-774 MAD/CFH, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014), citing 20 C.F.R. § 404.1527 (including "'statements . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' claimant's capabilities, and any physical or mental restrictions").  "Taken together, [Plaintiff's] testimony and [the treatment notes from Dr. Wnuk and his physician's assistant] constitute 'relevant evidence [that] a reasonable mind might accept as adequate to support'" the RFC as determined by the ALJ.  See Johnson v. Colvin, No. 15-3483-CV, 2016 WL 5539890, at *2 (2d Cir. Sept. 29, 2016) (quoting Richardson, 402 U.S. at 401); see also Scouten v. Colvin, No. 15-CV-76S, 2016 WL 2640350, at *4 (W.D.N.Y. May 10, 2016) ("[t]here is no error where . . . an ALJ bases his RFC on Plaintiff's own testimony" together with relevant medical evidence).

Finally, Plaintiff argues that the ALJ's RFC determination is erroneous because it rests on the ALJ's medical expertise, and the ALJ is not a medical expert.  This Circuit has held that an ALJ has not impermissibly relied on his own medical judgment where, as here, he "weigh[s] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013); see also Mulrain v. Comm'r of Soc. Sec., 431 F. App'x. 38, 39 (2d Cir. 2011) (finding no error where "[t]he medical evidence in the record concerning [plaintiff]'s condition and his own testimony provide substantial evidence to support the administrative law judge's . . . determination").  Furthermore, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a

common sense judgment about functional capacity even without a physician's assessment." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) report and recommendation adopted, No. 08-CV-828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010), quoting Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). The ALJ appropriately relied on the record as a whole in forming his RFC, including the lack of evidence that the Plaintiff's symptoms worsened after he was laid off from work. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[the Commissioner] is entitled to rely not only on what the record says, but also on what it does not say").

12.    For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of Court shall CLOSE this case.

SO ORDERED.

Dated:  October 18, 2016
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge